GARY M. RESTAINO
United States Attorney
District of Arizona
Serra M. Tsethlikai
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7358
Email: serra.tsethlikai@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Javier Alejandro Ramos Velderrain,<br><br>Defendant. | CR-21-03282-SHR<br><br>Government's Objection to the PSR and Sentencing Memorandum |

Plaintiff, United States of America, by and through its attorneys, Gary M. Restaino, United States Attorney for the District of Arizona, and Serra M. Tsethlikai, Assistant U.S. Attorney, hereby objects to Probation's failure to assess a four-level enhancement for trafficking in firearms under §2K2.1(b)(5) and failure to assess a four-level enhancement for knowing the firearms would be transported out of the United States under § 2K2.1(b)(6)(A) of the Sentencing Guidelines and hereby submits its sentencing memorandum. The government requests that this Court find that the Adjusted Offense Level is 22 with a sentencing range of forty-one (41) to fifty-one (51) months of imprisonment (Level 22, Criminal History Category I).

Respectfully submitted this 17th day of January 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Serra M. Tsethlikai*

Serra M. Tsethlikai
Assistant U.S. Attorney

**A. Statement of Facts**

The government submits on the facts as presented in the Pre-Sentence Investigation Report (hereinafter "PSR") under "The Offense Conduct" in paragraphs 6 through 23 on pages 4 through 6 of the PSR. The government further supplements the facts with evidence which was presented at trial and evidence that was included in the disclosure but was not submitted at trial. This evidence includes the defendant's bank records which was listed as a trial exhibit, though it was not introduced during the trial.

**Government's Timeline of Events**

| Date | Description | Amount | Exhibit |
|---|---|---|---|
| 06/12/20 | D purchased a Century Arms VSKA | -$709.87 | EX2 |
| 06/12/20 | Bk of America Deposit | $2,400 | EX19 |
| 06/12/20 | AFNI Inc-Payroll Deposit | $944.62 | EX19 |
| 6/15/20 | Bk of America Deposit | $480.00 | EX19 |
| 06/15/20 | GunMagWarehouse Checkcard Purchase[1] | -$2,200.21 | EX19 |
| 06/16/20 | D purchased a Century Arms VSKA | -$709.81 | EX3 |
| 06/25/20 | Bk of America Deposit | $2,580 | EX19 |
| 06/26/20 | AFNI Inc.-Payroll Deposit | $810.68 | EX19 |
| 06/29/20 | Bk of America Deposit | $920 | EX19 |
| 06/29/20 | Bk of America Deposit | $150 | EX19 |
| 06/29/20 | Bk of America Deposit | $80 | EX19 |
| 06/29/20 | GunMagWarehouse Checkcard Purchase[2] | -$2,380.41 | EX19 |

---

[1] GunMagWarehouse did not forward the invoice for Velderrain's order. It is noted that this business only sells magazines for firearms.

[2] On June 25, 2020, Velderrrain ordered the following:
   100 TAPCO Intrafuse AK-47, 7.62x39mm caliber – 30-round magazines
   100 KCI AR-15 .223/5.56 30-rounds magazines
   5 Magnum Research Desert Eagle 50 Action Express 7-round magazines
   Total $2,380.41        Govt. Disclosure p. 363 - 374

| Date | Description | Amount | Ex |
|---|---|---|---|
| 06/29/20 | Cheaper than Dirt Checkcard Purchase[3] | **-$1,012.95** | EX19 |
| 06/30/20 | Cheaper than Dirt Checkcard Purchase | **-$57.23** | EX19 |
| 07/10/20 | GunMagWarehouse Checkcard Purchase | **-$41.93** | EX19 |
| 07/06/20 | Bk of America Deposit | **$540** | EX19 |
| 07/13/20 | Cheaper than Dirt Refund from 06/29/20 purchase[4] | **$1,012.95** | EX19 |
| 07/13/20 | Cheaper than Dirt Checkcard Purchase | **-$57.23** | EX19 |
| 07/17/20 | Bk of America Deposit | **$1,000** | EX19 |
| 07/20/20 | Bk of America Deposit | **$530** | EX19 |
| 07/20/20 | GunMagWarehouse Checkcard Purchase[5] | **-$2,200.39** | EX19 |
| 07/27/20 | GunMagWarehouse Checkcard Purchase | **-39.81** | EX19 |
| 07/27/20 | GunMagWarehouse Checkcard Purchase | **-$70.57** | EX19 |
| 07/27/20 | Grab A Gun Checkcard Purchase | **-$33.93** | EX19 |
| 07/27/20 | GunMagWarehouse Checkcard Purchase[6] | **-1,185.50** | EX19 |

---

[3] On June 28, 2020, Velderrain ordered the following:
   100 UTG AR-15 .223/5.56 Polymer Window 30-round magazines
   Total = $1,012.95

However, Grab a Gun cancelled the order. Grab a Gun noted that Velderrain was a "first time customer and the order was quite large." As such, Grab a Gun requested Velderrain forward a copy of his valid ID, but Velderrain failed to do so. See refund from Grab a Gun on July 13, 2020. Noted in green. Govt. Disclosure 335-340.

[4] Cheaper than Dirt and Grab a Gun are firearm accessory and parts businesses.

[5] On July 17, 2020, Velderrain ordered the following:
   10 Magpul PMAG GEN M2, AR-15 .223/5.56 30-round magazines
   100 TAPCO Itrafuse AK-47, 7.62x39mm Russian 30-round magazines
   Total = $2,200.39          Govt. Disclosure 363 -374

[6] On July 25, 2020, Velderrain ordered the following:
   10 pack MagPul PMAG GEN M2, AR-15 .223-5.56 30-round magazines (100 magazines)
   Total = $1,185.50          Govt Disclosure 363-374
   **Note**: Other GunMagWarehouse purchases involved the purchase of multiple-caliber magazines.

| | | | |
|---|---|---|---|
| 07/27/20 | Bk of America Deposit | **$1,132** | EX19 |
| 10/13/20 | D purchased a Barrett, M82A1, .50 BMG rifle | **-$8,647.99** | EX4[7] |
| 11/04/20 | Barrett, M82A1, .50 BGM rifle recovered at the Nogales POE | | |
| 02/07/21 | VSKA, purchased 06/16/20, recovered in Mexico (236 days) | | EX18 |

**B. Government Objects to Probation's Failure to Apply § 2K2.1(b)(5) as an Enhancement as the Defendant Did Engage in the Trafficking of Firearms and Failure to Apply § 2K21(b)(6)(A) as an Enhancement as the Defendant Had Reason to Believe the Firearms Would be Transported Out of the United States**

In applying § 2K2.1, the government asserts the guidelines should be calculated as follows:

| | | |
|---|---|---|
| § 2K2.1(a)(7) | Base Offense Level | 12 |
| § 2K2.1(b)(1)(A) | 3 Firearms involved | +2 |
| *(§ 2K2.1(b)(5)* | *Trafficking in Firearms* | *+4)* |
| *(§ 2K2.1(b)(6)(A)* | *Outside the United States* | *+4)* |
| | Total Offense Level | 22 |
| | Acceptance | -0 |
| | Total Adjusted Offense Level | 22 |

As the defendant's Criminal History Category is I, his sentencing range should be 41 to 51 months of imprisonment.

**§ 2K2.1(b)(5) – Engaged in the Trafficking of Firearms**

The Application Note of Subsection (b)(5) states:

(A) In General. – Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant –

(i) transported, transferred, or otherwise disposed of two or more firearms to

---

[7] On September 29, 2020, the defendant ordered the Barrett, .50 BMG rifle and paid $4,600 cash. On 10/13/20, the defendant paid the remaining balance of $4,047.99 cash and took possession of the Barrett .50 BMG rifle.

     another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; **and**

 (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual –

  I. whose possession or receipt of the firearm would be unlawful; **or**

  II. who intended to use or dispose of the firearm unlawfully.

(B) Definitions — For purposes of this subsection:

 "Individual whose possession or receipt of the firearm would be unlawful" means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.  "Crime of violence" and "controlled substance offense" have the meaning given those terms in § 4B1.2 (Definitions of Terms Used in Section 4B1.1).  "Misdemeanor crime of domestic violence" has the meaning given that term in 18 U.S.C. § 921(a)(33)(A).

 The term "defendant", consistent with § 1B1.3 (Relevant Conduct), limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused.

*United States Sentencing Commission Guidelines Manual*, § 2K2.1, Commentary, Application Notes, *emphasis added*.

 From June 12, 2020, through October 13, 2020, just four months, the defendant purchased:

- Two (2) AK-47-type, 7.62x39 mm rifles,
- One (1) Barrett .50 BGM rifle,

- Two hundred (200) 30-round magazines for AK-47-type firearms,
- Two hundred and ten (210) 30-round magazines for AR-15 firearms; and
- Five (5) 7-round magazines for a .50 caliber firearm.

For these items alone, the defendant spent $ 15,833.97 and either paid cash or had the funds transferred from his checking account. The order numbers and amounts paid do not include the June 15, 2020, $2,200.21 purchase from GunMagWarehouse nor the June 29, 2020, attempted purchase of an additional 100 AR-15 magazines from Grab a Gun.

Financial records for the defendant indicate three sources of income in 2020 for the defendant: Arizona Labor Force Incorporated, Anderson Financial Networks (Afni Call Center), and Panda Express. *See EX. 8.* The Department of Economic Security reported his second quarter 2020 income as 1,917.30 from Anderson Financial Networks which roughly corresponds to the AFNI deposits. *Id.* The defendant's paychecks from AFNI call center totaled 1,755.30 for the month of June 2020. There were no other AFNI deposits noted in the defendant's bank records after June 26, 2020. The only other significant income reported for 2020 by the Department of Economic Security was for the fourth quarter with an amount of $1,478.72 from Panda Express Inc. *Id.* There were, however, multiple cash deposits of nearly $1,000 or more during that time frame.

The defendant was engaged in purchasing and procuring three (3) firearms and over 415 magazines. The firearms and the related magazines purchased by the defendant are the Mexican cartel-preferred firearms. Finally, the defendant paid $ 10,067.67 for the three firearms – all in cash. The defendant knew that the firearms were intended to be used unlawfully, that is, by Mexican drug cartel members in furtherance of their drug trafficking activities. Thus, the defendant was trafficking in firearms, and he should be assessed a four-level enhancement for engaging in the trafficking of firearms.

**§ 2K2.1(b)(6)(A) - – Defendant Knew Firearms were to be Transferred Out of the United States**

This case started with the interception of the Barrett, .50 BGM rifle at the Nogales POE.

It was intercepted on November 4, 2022 - just twenty-two days after the defendant purchased it. This is a very short time to crime. The .50 caliber sniper rifle is desirable by Mexican drug cartels because the cartridge it fires offers a devastating combination of range and power.[8] *(Voting from the Rooftops – Section One:  The Capability of the .50 Caliber Sniper Rifle, Violence Policy Center)*.  .50 caliber rifles can accurately hit a long-range target at 1,969 yards away.  *Id.*  A .50 BMG round can slice through body armor, knock down armored limousines, destroy radar dishes, and ignite bulk fuel tanks – all at the distance of ten football fields. *Id.*   It is one of the most highly powered firearms that can be purchased outside of the military.  It has massive destructive power.

In addition, the fact that the Barrett .50 BGM rifle was intercepted at the US – Mexico Nogales POE just twenty-two days after it was purchased, with cash, while the defendant was a college student, also clearly demonstrates that the defendant knew or had reason to know that the firearm was intended to be exported to Mexico.  *See, PSR, p. 15, first full paragraph*.  The recovery occurred so quickly because the Barrett .50 BGM rifle was always intended to be smuggled into Mexico after its purchase.

Post-*Miranda*, the defendant claimed the Barrett, .50 BGM rifle was purchased as a gift to his grandfather. As discussed and demonstrated at the trial, the defendant's grandfather is an elderly man of minimal means and no affinity for firearms.  Moreover, the evidence showed the defendant had not resided with his grandfather for years prior to the crime. The defendant's false statement proves that he purchased the firearm knowing it would be smuggled into Mexico.

As the defendant transferred three firearms with knowledge, intent, or reason to believe the firearms would be transported out of the United States, the four (4)-level

---

[8] *https://vpc.org/publications/voting-from-the-rooftops/voting-from-the-rooftops-section-one-the-capability-of-the-50-caliber-sniper-rifle/#:~:text=The%20trained%20operator%20of%20a,spectrum%20of%20personnel%20and%20material*.

enhancement should be assessed.

**C. GOVERNMENT'S SENTENCING RECOMMENDATION**

Purchasing and procuring two AK-47-type rifles and a .50 caliber rifle to be smuggled into Mexico to Mexican drug cartel members is not only very serious but deadly. The drug cartel wars for control of the drug market not only affect those involved in drug trafficking but innocent individuals and communities.

The government recommends a sentence of forty-two (42) months of imprisonment. In looking at the sentencing factors outlined in Title 18, United States Code, Section 3553(a), a sentence of forty-two months of imprisonment would reflect the seriousness of the offense for which the defendant has been convicted, provide adequate deterrence to the defendant, and protect the public and the people of Mexico from further crimes of the defendant.

<u>(a)(1):   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.</u>

As described above, the offense conduct is very serious. Arming Mexican criminal elements with military-style firearms and munitions is life-threatening to the innocent civilians living in Mexico who are trapped by those trying to gain control of the highly lucrative drug trafficking trade in Mexico using gun violence.

While the defendant has no prior criminal history, his criminal conduct spanned over four months. It not only involved procuring three firearms but also procuring over 400 magazines for AK-47-type, AR-15 and .50 caliber firearms. In addition, when he was interviewed by law enforcement, he falsely claimed that he purchased the .50 caliber rifle for his grandfather and maintained that position during trial. At trial, the defendant incredibly claimed that the Federal Firearm's Licensee (FFL) who sold him the .50 caliber rifle told the defendant to list the wrong address, ignoring the fact that the defendant had a presented the newly issued ID card with his Flagstaff residence to the FFL, and implied that the FFL altered the ATF Form 4473 by forging his signature. The jury rejected the

defendant's version of the facts.

This defendant refuses to accept responsibility for his criminal actions, to acknowledge the purpose of his criminal actions and to admit that he knew his criminal actions would ultimately arm Mexican drug cartels. *See PSR, p. 15, first full paragraph.*

**D. CONCLUSION**

The government requests this Court sustain the government's objections and find that an additional four (4)-level enhancement should be applied as the defendant was engaged in the trafficking of firearms knowing those firearms would be used by drug traffickers and an additional four (4)-level enhancement should be applied as the defendant knew or had reason to know that the firearms would be transported out of the United States and smuggled into Mexico.

Finally, the government requests that this Court sentence the defendant to forty-two (42) months of imprisonment to meet the objectives of sentencing; to address the defendant's failure to accept responsibility for his criminal conduct; to reflect the seriousness of the offenses; to reflect the number and type of firearms transferred, all preferred by Mexican drug cartels, particularly the Barrett .50 caliber rifle; and to address the number of people in Mexico who are endangered by firearms being illicitly and illegally exported into Mexico.

Respectfully submitted this 17th day of January 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Serra M. Tsethlikai*

Serra M. Tsethlikai
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 17th day of January 2024, to:

Mr. Charles A. Thomas, Esq.
Attorney for Mr. Javier Alejandro Ramos Velderrain

Tara J. Lopez
United States Probation Officer